# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**REYES TERRONES-LOPEZ,**
    Plaintiff,

vs.                                                                 No. 16-CV-1353 JAP/SCY
                                                                       15-CR-0645 JAP

**UNITED STATES OF AMERICA,**
    Defendant.

## MEMORANDUM ORDER AND OPINION

On December 12, 2016, Plaintiff Reyes Terrones-Lopez (Plaintiff) pro se filed a MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (No. 16 CV 1353, Doc. No. 1; No. 15 CR 0645, Doc. No. 38) (Motion) asking this Court to vacate, set aside, or correct his sentence and alleging that his attorney's performance violated his Sixth Amendment right to effective assistance of counsel. He claims that his legal counsel did not effectively represent him during the change of plea and sentencing proceedings. In its response,[1] the United States argues that at all times Plaintiff's counsel performed reasonably and in accordance with Plaintiff's instructions. The Plaintiff's Reply[2] denies this assertion.

On February 20, 2018, the Court conducted a hearing on Plaintiff's Motion[3] as well as on the issue regarding instructions Plaintiff had given his counsel that was raised in Plaintiff's Reply. The Court has reviewed the Motion, the exhibits, and all briefing. For the reasons explained below, the Court will grant the Motion.

---

[1] UNITED STATES' RESPONSE TO DEFENDANT/PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (Civ. Doc. No. 11) (Response).
[2] MOTION IN OPPOSITION TO THE GOVERNMENT'S RESPONSE TO MOTION § 2255 (Civ. Doc. No. 13) (Reply).
[3] On February 8, 2018, the Court appointed Mr. Brian Pori to represent defendant for the hearing. Civ. Doc. No. 20.

## I. Background

On January 12, 2015, United States Border Patrol Agents encountered Plaintiff in Dona Ana County, New Mexico and discovered he was a Mexican citizen in this country illegally. A records check revealed Plaintiff had served a 108-month sentence for a federal drug crime, and subsequently had been deported from the United States in 2014. On January 14, 2015, the government charged him with Reentry of a Removed Alien in Violation of 8 U.S.C. §§1326(a) and (b). Crim. Doc. 1.

### a. Plea Hearing

On February 26, 2015, Plaintiff pled guilty to an Information without the benefit of a plea agreement. Crim. Doc. 13. Ms. Cori Harbour-Valdez (Ms. Harbour-Valdez) had been appointed to represent him and did so at the change of plea hearing.[4] A Spanish interpreter was present, and Plaintiff had a headset so that he could hear the Spanish translation.

At the change of plea hearing, Ms. Harbour-Valdez stated that Plaintiff wished to plead guilty. She explained that he had declined a fast-track plea agreement under Fed. R. Crim. P. 11(a)(1)(C).[5] She acknowledged that with the fast-track plea agreement Plaintiff would serve between 30 to 37 months or 37 to 46 months, depending on Plaintiff's criminal history category,

---

[4] Ms. Harbour-Valdez also represented Plaintiff in the corresponding supervised release violation proceeding.
[5] Fast-track plea agreements allow defendants accused of certain immigration offenses to plead guilty early in the process. In so doing, they waive their rights to file appeals and certain motions, in exchange for prosecutors' recommendations of reduced sentences under the United States Sentencing Guidelines (USSG). *United States v. Morales-Chaires*, 430 F.3d 1124, 1127 (10th Cir. 2005); see also USSG §5K3.1 (providing "Upon motion of the Government, the court may depart downward not more than **4** levels pursuant to an early disposition program…."). If the sentencing court accepts the plea agreement under Rule 11(c)(1)(C), the sentence recommendation is binding on the court. If the court rejects the agreement, defendants have the right to revoke their plea.

and that without one he faced a range of 51 to 63 months or 63 to 78 months. Civ. Doc. No. 11-1, p. 26. Ms. Harbour-Valdez gave the following reason for rejecting the fast-track plea agreement:

> There are some extenuating circumstances that I intend to bring forth to the District judge under a 3553 framework that I would be prohibited from doing with the fast track and I believe that those will be moving factors that the Court will consider ---.

Civ. Doc. No. 11-1, p. 25.

### b. Post Plea Events

On April 21, 2015, the United States Probation Office (USPO) disclosed the Petitioner's Presentence Investigation Report (PSR). On April 29, 2015, the USPO provided an Addendum. The PSR documented Plaintiff's allegations that information he gave the government in an earlier case had resulted in death threats to his family and him, the kidnapping of family members, and the vandalizing of his home. On this basis, the PSR indicated that under United States Sentencing Guideline 5K1.12 coercion and duress might be potential grounds for a downward departure from the calculated guideline range and therefore, a lower sentence. PSR ¶¶ 63–64. The PSR also mentioned factors that may warrant a sentence under 18 U.S.C. § 3553(a) outside the Guideline range. PSR ¶ 65. However, because the USPO was unable to corroborate any of Plaintiff's statements with outside sources, the PSR did not recommend a departure under USSG 5K2.12 or a variance under 18 U.S.C. § 3553(a). Instead, the USPO concluded that a sentence within the guideline range of 46 to 57 months was warranted. PSR ¶ 66.

On July 21, 2015, Plaintiff attended a debriefing with his attorney Ms. Harbour-Valdez regarding the individuals Plaintiff had paid to smuggle him across the border into the United States. None of the information he revealed during his debriefing was helpful to the Assistant United States Attorney (AUSA), who declined to file a motion for a downward departure under USSG § 5K1.1 based on substantial assistance. Until Plaintiff's sentencing hearing on December

8, 2015, nothing further occurred in the case. Despite having told Magistrate Judge Lourdes A. Martinez at the change of plea hearing that she contemplated making an argument at sentencing based on "a 3553 framework," Ms. Harbor-Valdez never filed a sentencing memorandum presenting that argument.

### c. Sentencing Hearing

On December 8, 2015, the Court held a sentencing hearing. Prior to the hearing, Ms. Harbour-Valdez did not file any objections to the PSR nor did she file a motion or sentencing memorandum seeking a downward departure under the USSG or a variance under 18 U.S.C. § 3553. The Court found that "Mr. Reyes Terrones-Lopez knowingly, voluntarily and intelligently entered a plea of guilty to the charge in Information 2015-645." Civ. Doc. No. 11-2, p. 5. The Court adopted the facts and findings in the PSR and its Addendum. *Id*. The Court indicated that it intended to impose a sentence of 46 months, which was at the bottom of the guideline range.

Ms. Harbour-Valdez then asked the Court to "consider something a little bit less than the 46 months." Transcript of Sentencing Hearing, Civ. Doc. No. 11-2, p. 9. She informed the Court that her client had attempted to help the government by disclosing information about other criminals and criminal acts. She mentioned the death threats against Plaintiff and his family. She indicated that prior to the sentencing hearing, Plaintiff asked her:

> [T]o get him the most amount of time as possible because he felt like he was more safe in a U.S. prison than he would be in Mexico after being deported. After being in jail for almost eleven months, he's obviously changed his mind. He—his mom has been diagnosed with breast cancer. There's some other concerns obviously with his wife who is not a legal resident but has filed paperwork based on the threats that she's received to try to adjust her status.
>
> But he told me just this morning that just getting to another part of Mexico and moving as far away to try to hide because they know that obviously he can't be here but he obviously fears going back to where he was from in Mexico.

Transcript of Sentencing Proceedings, Civ. Doc. No. 11-2, pp. 8–9. Plaintiff also made a statement to the court:

> I want to apologize for having returned to the United States but my life was in danger in Mexico. I was beaten up and had to come back because my mother was sick and my son also died. My brother as well died in February and what I want is to see them again because I haven't seen them since 2006. My parents cannot travel to see me and she told me that she might have another attack because of the diabetes at any time.

Transcript of Sentencing Proceedings, Civ. Doc. No. 11-2, pp. 9–10

This Court imposed a sentence of 46 months, which was at the bottom of the PSR recommended range.[6]

### d. Direct Appeal

On December 22, 2015, Plaintiff filed a sealed direct appeal with the Tenth Circuit alleging ineffective assistance of counsel.[7] In an Order and Judgment entered on November 4, 2016, the Tenth Circuit dismissed the appeal without prejudice because it could not resolve Plaintiff's claims on the record before it. Crim. Doc. No. 37-1.[8]

---

[6] The Court imposed an additional one-month consecutive sentence for violation of a provision of the Defendant's supervised release for his Oklahoma aggravated felony conviction.

[7] On January 6, 2016, the Tenth Circuit entered an order appointing Ms. Harbour-Valdez as appellate counsel effective nunc pro tunc as of the date of the notice of appeal. The same order ends her appointment and appoints the Federal Public Defender for the District of New Mexico as new counsel. Crim. Doc. 30. Subsequently, on January 13, 2016, Assistant Federal Public Defender Brian Pori entered an appearance as counsel for Plaintiff.

[8] In its order, the Tenth Circuit observed:

> Although defense counsel's conversation with the magistrate judge reveals her reasons for advising Terrones-Lopez to forgo the fast track plea, we do not know the nature and quality of the extenuating circumstances defense counsel planned to present to the district court; the extent of any investigation defense counsel conducted prior to the plea hearing; the events that occurred between Terrones-Lopez's guilty plea and the sentencing hearing; or defense counsel's reasons for not filing a downward departure motion.

Crim. Doc. 37-1 p. 3–4. In a footnote, the Tenth Circuit urged any district court evaluating a subsequent §2255 petition to consider "expedited review so as to avoid the potential injustice that would occur if Terrones-Lopez were to complete his 46-month sentence prior to a judicial determination of his claim." Crim. Doc. 37-1, p. 4.

## II. Petitioner's § 2255 Argument

In his Motion, Plaintiff alleges that he received ineffective assistance of counsel in his representation by Ms. Harbour-Valdez. He raises the following claims: (1) Counsel was ineffective during plea proceedings; and (2) Counsel was ineffective at sentencing.[9]

In its Response, the government states that there is no merit to Plaintiff's claims. Included with the Response is an Affidavit from Ms. Harbour-Valdez.[10] The Affidavit states that Ms. Harbour-Valdez did not render ineffective assistance of counsel because she properly advised Plaintiff of his options throughout the criminal proceedings and all her actions complied with Plaintiff's wishes. Ms. Harbour-Valdez asserts that at the time of the plea hearing she believed Plaintiff wanted "to be sentenced to as much time as possible" because "he felt safer in a U.S. prison than in Mexico, where he believed his life was in danger." Affidavit, Civ. Doc. No. 11-3, p. 1.

In his Reply, Plaintiff alleges that Ms. Harbour-Valdez perjured herself in her Affidavit. He attaches as exhibits to his Reply copies of various documents dated 2009 through 2016 that he asserts demonstrate his desire to get out of prison as soon as possible.

## III. Strickland Standard

A defendant in a criminal case has a Sixth Amendment right to effective assistance of counsel during any stage of the prosecution, formal or informal, in court or out, where counsel's

---

[9] Plaintiff's Motion made the following four claims: (1) Trial counsel was ineffective in failing to properly advise Plaintiff of his constitutional rights under the Fifth and Sixth Amendments, so his guilty plea was involuntary and unknowing; (2) Trial counsel was ineffective by failing to object to the presentence report, specifically, to information that he had a conviction for an aggravated felony; 3)Trial counsel was ineffective because she did not assure that there was an adequate basis for his guilty plea; 4) Trial counsel was ineffective by failing to raise a timely notice of appeal based on Plaintiff's actual innocence. At the February 20, 2018 hearing, Plaintiff advised the Court that he was only pursuing the claims based on ineffective assistance of counsel at his change of plea proceeding and at his sentencing.

[10] Upon motion by the government, Judge Yarbrough found that Plaintiff had waived attorney client privilege. Civ. Doc. No. 10.

absence might "derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218, 226 (1967). Plea negotiations, sentencing hearings, and appeals are critical stages of criminal proceedings to which the right to counsel adheres. *Lafler v. Cooper*, 566 U.S. 156, 177 (2012) (plea negotiations); *Glover v. United States,* 531 U.S. 198, 203-04 (2001) (sentencing); *Ellis v. United States*, 356 U.S. 674, 675 (1958) (direct appeals).

A court examines whether a defendant received effective assistance of counsel through the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prove a claim, a defendant must demonstrate that his attorney's representation fell below an objective standard of reasonableness and that he was prejudiced. *Id*. at 687. The court may address the performance and prejudice component in any order but need not address both if the defendant fails to make a sufficient showing of one. *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998). Ineffectiveness of counsel is a mixed question of law and fact. *Strickland*, 466 U.S. at 698.

IV. **Analysis**

A. **Ineffective Assistance of Counsel During Plea Proceedings**

When a defendant enters a guilty plea on the advice of counsel, the defendant may challenge the voluntariness of the plea by showing ineffective assistance of counsel. *Hill v. Lockart*, 474 U.S. 52, 56-57 (1985). A guilty plea is valid only if a defendant enters it knowingly, voluntarily, and intelligently. *United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002). This standard is satisfied only if a defendant has "a full understanding of what the plea connotes and of its consequences." Under *Boykin v. Alabama,* 395 U.S. 238, 244 (1969*)*. A guilty plea will be void if it is "induced by promises …which deprive it of the character of a voluntary act." *Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir. 1970). An erroneous estimate that becomes the basis for a defendant's subjective expectations is not involuntary. *See United States*

*v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). However, a guilty plea based on an estimate communicated in the form of a promise is involuntary. *Wellnitz*, 420 F.2d at 936.

Plaintiff asserts that his plea was not knowing or voluntary because Ms. Harbour-Valdez effectively made a promise to Plaintiff that he would get a lower sentence if he let the judge sentence him without a plea agreement. However, Ms. Harbour-Valdez disputes that she ever made any promises to the Mr.Terrones-Lopez regarding his sentence. According to Ms. Harbour-Valdez, Plaintiff wanted to reject the offer of the fast-track plea agreement because he wanted a long sentence so he could stay in the United States and avoid returning to Mexico. She maintains that during the plea proceedings she acted only at Plaintiff's direction. The record reflects conflicting evidence on this point.

There is evidence that supports Ms. Harbour-Valdez' assertion that Plaintiff feared returning to Mexico. Repeatedly, Plaintiff asserted that his life and his family's lives were in danger while they were in Mexico. During his sentencing hearing, Plaintiff apologized for returning to the United States, and he defended his decision by stating that he returned for two reasons: (1) he feared for his life in Mexico; and (2) he wanted to see his family who were in the United States. Throughout the record, Plaintiff iterated his fear of individuals in Mexico. Not once has Plaintiff refuted this.

There is equally strong evidentiary support for Plaintiff's contention that he did not direct Ms. Harbour-Valdez to seek a long sentence. During the change of plea hearing, Ms. Harbour-Valdez informed the Court that the Plaintiff rejected the fast-track plea offer because it was her strategy to get the defendant a lower sentence by arguing for a § 3553 variance. These statements

8

contradict her assertion that Plaintiff told her he wanted a long sentence.[11] At the February 20, 2018 hearing, she explained the discrepancy by stating that the Plaintiff did not want to reveal his true reasons for rejecting the fast-track plea offer.

Both the Plaintiff and Ms. Harbour-Valdez testified at the February 20, 2018 hearing. The Court found them equally credible. It is unclear what caused the miscommunication between them during the change of plea proceedings. Therefore, based on the record and the testimony of the parties, the Court cannot find that Ms. Harbour-Valdez performed objectively unreasonably in her representation of Plaintiff during the change of plea proceedings.

### B. Ineffective Assistance of Counsel During Sentencing Hearing

Before sentencing, counsel has a duty to make reasonable investigations within the context of the circumstances of the case. *Strickland*, 466 U.S. at 690-91. When evaluating an attorney's decision not to introduce mitigating evidence of a petitioner's background during sentencing, a court should focus on "whether the investigation supporting counsel's decision not to introduce mitigating evidence of [a defendant's background] was itself reasonable." *Wiggins v. Smith*, 539 U.S. 510, 523 (2007). A defendant must specifically identify the alleged unreasonable acts or omissions. *Strickland,* 466 U.S. at 690-91. When evaluating strategic choices regarding representation, the Court may examine conversations between the petitioner and his counsel that may prove or disprove the petitioner's § 2255 claim. *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009).

Plaintiff argues that in regard to the sentencing proceedings Ms. Harbour-Valdez was ineffective for two reasons. First, he contends that Ms. Harbour-Valdez should have filed, but did

---

[11] While the Court is mindful of a defense attorney's obligation to defend a client vigorously, the Court is concerned that, by her own admission, Ms. Harbour-Valdez misled the Magistrate Judge during the plea hearing about the reason for declining the fast-track plea offer.

not file, an objection to the findings in the PSR. Second, he claims that because Mr. Harbour-Valdez did not file a sentencing memorandum, she failed to present effectively any arguments for a downward departure or a variance from the guideline range calculated in the PSR.

In her Affidavit and in her testimony at the February 20, 2018 hearing, Ms. Harbour-Valdez gave two reasons in support of her decision not to file a sentencing memorandum or to advocate for a departure from the guidelines during sentencing. First, she stated that she did not file a sentencing memorandum because, until the morning of the sentencing hearing,[12] she believed Plaintiff wanted to serve a long sentence. She contends that until that moment, she based all of her actions on that assumption. Second, she said that she did not seek a departure under section 5K of the guidelines because Plaintiff did not give any helpful information to the government during his debriefing in July 2015.

The Court finds that Ms. Harbour-Valdez's representation of Plaintiff during the sentencing proceedings was objectively unreasonable. While prior to the sentencing hearing Ms. Harbour-Valdez may have believed that Plaintiff wanted a long sentence, and although her belief may have been the result of a miscommunication, the record shows that on the morning of the sentencing hearing she became aware that Plaintiff wanted something completely different. At no time did she ask the Court for a continuance so she could accommodate her client's new instructions.

---

[12] Ms. Harbour-Valdez gave conflicting testimony about the timing of her client's change of instructions. At the sentencing hearing, Ms. Harbour-Valdez said that Plaintiff had changed his instructions to her on the morning of the sentencing hearing. Transcript of Sentencing Hearing, Doc. 11-2 p. 8. She made the same statement in her Affidavit. Doc. 11-3, p. 2. At the February 20, 2018 hearing, however, Ms. Harbour-Valdez testified that Plaintiff gave her new instructions the day prior to the sentencing hearing. Although the actual date on which Plaintiff changed his instructions to Ms. Harbour-Valdez has no bearing on the Court's analysis, the Court finds that Plaintiff changed his instructions to Ms. Harbor-Valdez on the day of the sentencing hearing.

At the February 20, 2018 hearing, Ms. Harbour-Valdez explained that she did not think she needed to ask for a continuance to seek corroboration of the danger her client faced because she planned to state what her client had told her and he was going to make a separate statement. However, neither her statement nor his could have constituted corroborating evidence. Specifically, Ms. Harbour-Valdez knew that Plaintiff's wife might corroborate the statements in the PSR concerning coercion and duress, but Ms. Harbour-Valdez did not seek a continuance to try and obtain that testimony from Plaintiff's wife. Furthermore, although Ms. Harbour-Valdez requested something "a little bit less than the 46 months," she never asked for any specific lower sentence nor did she identify any legal basis on which the Court could grant her vague request. While courts have excused an attorney's decision not to contest certain findings in a PSR as strategical, there is no indication that at Plaintiff's sentencing hearing Ms. Harbour-Valdez was pursuing a reasonable strategy that justified her decision not to seek a continuance.

In her Affidavit, Ms. Harbour-Valdez also claimed that she did not seek a downward departure on Plaintiff's behalf because "None of the information Mr. Terrones-Lopez provided [to the government's attorneys] was useful and thus no §5K motion was filed on his behalf." Her statement implies that the only basis for a departure would have been assistance to the government. That is incorrect given the information in the PSR. A defendant may ask for a departure under the USSG or a variance under § 3553 based on many things. *See* USSG §5K2 (listing 24 departure provisions).[13] As mentioned, the PSR identified coercion or duress as one valid basis for departure. USSG §5K2.12 (providing for a downward departure because of serious coercion, blackmail, or duress). Furthermore, the departure provisions found in Part K of the USSG are not the only means of obtaining a departure. One of the other USSG provisions

---

[13] Part K of the Sentencing Guidelines lists the grounds and criteria for listed departures.

also may have been relevant.[14] Yet although Ms. Harbour-Valdez knew of the potential availability of a departure, she did not object to the PSR's conclusions or prepare a sentencing memorandum requesting a USSG departure or a § 3553 downward variance. It seems she simply abandoned, both orally or in writing, the very argument for a lower sentence under a § 3553 framework that she told Magistrate Judge Martinez justified the rejection of the fast-track plea offer.

Next, under S*trickland*, the Court must address whether Plaintiff was prejudiced by Ms. Harbour-Valdez' representation of Plaintiff at the sentencing hearing. Prejudice is established when "'any amount of [additional] jail time has Sixth Amendment significance.'" *Lafler*, 566 U.S. 156, 165 (2012) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)). For the following reasons, the Court finds that Plaintiff has demonstrated prejudice.

The Court notes that, as an initial matter, if Ms. Harbour-Valdez had asked for a continuance, the Court would have granted it. It is the Court's custom to grant an attorney's request for a continuance based on circumstances beyond the attorney's control. Here, on the day of sentencing, Ms. Harbour-Valdez received information from her client that substantively changed her approach to the hearing. There is no doubt that the Court would have granted a continuance had she asked for one.

Next, it is the Court's customary practice to impose a low sentence on a defendant who appears for sentencing on his first reentry offense, if the defendant does not have a lengthy criminal history. Usually, the Court increases the sentence length when a defendant, who is being sentenced on an unlawful reentry charge, has illegally reentered multiple times. If an attorney presents the Court with evidence supporting a basis for a departure under the USSG or a variance

---

[14]At the hearing, Mr. Pori referenced §2L1.2 n.7, which allows a departure based on cultural assimilation.

under § 3553, the Court often does so, particularly when the Court finds that the guideline range seems inappropriately high for the circumstances of the offense. Here, the Plaintiff did not have an extensive criminal history and this was his first immigration offense. At the sentencing hearing, the Court sentenced the Plaintiff at the bottom of the range calculated in the PSR. Had Ms. Harbour-Valdez presented an argument for a lower sentence, the Court would have departed downward under the USSG or alternatively, would have varied downward under § 3553. Because Plaintiff received a longer sentence than he would have if a proper argument for a lower sentence had been made, the Court finds that he was prejudiced.

"When a petitioner establishes ineffective assistance during sentencing, the appropriate remedy is resentencing." *Anderson v. Sirmons*, 476 F.3d 1131, 1148 (10th Cir. 2007). Because the Court has found a violation of Plaintiff's Sixth Amendment rights during sentencing based on ineffective assistance of counsel, the Court will grant Plaintiff's Motion to correct his sentence.

IT IS THEREFORE ORDERED that Plaintiff's MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY is GRANTED and Plaintiff will be resentenced accordingly.

_____
SENIOR UNITED STATES DISTRICT JUDGE